J. B. HENRIQUES, INC. *v.* UNITED STATES (No. 4944)[1]

[1] C.A.D. 695.

United States Court of Customs and Patent Appeals, December 15, 1958

*Benjamin M. Altschuler* for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *Mollie Strum*, trial attorneys, of counsel), for the United States.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges

O'CONNELL, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment rendered by the United States Customs Court, First Division, pursuant to its decision, Abstract 61228, overruling the appellant's protest and sustaining the collector's classification of an importation of certain acrylic resin articles, called "Perspex." The described merchandise was classified by similitude to cellulose acetate in sheets, under paragraph 1559, dutiable at 25 cents per pound under paragraph 31(a) (1) and (2) of the Tariff Act of 1930.

The importer accepted the classification as cellulose acetate by similitude as correct, but contended that duty should be levied under the same paragraph as cellulose acetate made into finished or partly finished articles at 20% ad valorem.

The provisions involved are set forth:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 31(a) (1) and (2) | Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate:<br>In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles | 25¢ per lb. |
| | Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for | 20% ad val. |

The merchandise consists of rectangular pieces of acrylic resin in three different sizes, namely 24⅞″ x 14⅛″ x ⅛″; 12¼″ x 11⁵⁄₁₆″ x ⅛″ and 12¼″ x 2⅛″ x ⅜″ and the sole issue is whether it is to be regarded

as sheets or has been sufficiently advanced in condition to be partly manufactured articles.

The sole witness was Jeffrey B. Henriques, president of the company which imported the merchandise. He testified that the material of which the instant merchandise is made is normally cast in sheets of standard size, the smallest being 48″ x 36″. He further stated that such merchandise is cut into the specific sizes above set forth, at an additional cost of 8%, in order to facilitate the making of transparent lids for ice cream dispensers.

Each of the lids consist of two identical sections hinged together and each section comprises a dished portion and a flat cover. The witness testified that the two dished portions are formed by shaping one of the 24⅞″ x 14⅛″ x ⅛″ imported pieces to form an elongated dish, cutting this transversely to form two identical sections, and closing the open end of each section with a piece formed from one of the 12¼″ x 2⅛″ x ⅜″ pieces, after which covers formed from the 12¼″ x 11⅝₆″ x ⅛″ pieces are applied. This process calls for two of each of the smaller sized imported pieces for each one of the larger size, and the witness stated that the pieces were ordered in substantially that proportion. The sizes and shapes of the imported pieces do not correspond exactly to those of the corresponding parts of the final articles, but are such that a minimum of trimming will be necessary in shaping.

It appears that the imported pieces have no other commercial use than in the making of lids, although it would be possible to use them in making signs or other articles of relatively small size.

█ It is well settled that merchandise need not be dedicated to the making of a single article in order to be a partly finished or manufactured article. *United States* v. *American Hecolite Denture Corp.*, 21 CCPA 131, T.D. 46465; *United States* v. *Pittsburgh Plate Glass Co.*, 44 CCPA 110, C.A.D. 646, and cases therein cited. Accordingly, the fact that the merchandise here in issue might conceivably be used for purposes other than that for which it was imported is not controlling as to its classification.

█ The exact point in the processing of raw material at which it becomes a partly finished article or manufacture is a matter which must be determined on the basis of the circumstances of the particular case involved. The following unchallenged authorities delineate the validity of that procedure.

In *Universal Shipping Co.* v. *United States*, 4 Ct. Cust. Appls. 245, T.D. 33479, this court held that square or circular pieces, of unspecified size, which had been cut from aluminum sheets were not "aluminum * * * in sheets" but partly manufactured articles of aluminum.

In *United States* v. *Geo. S. Bush & Co., Inc.*, 16 Ct. Cust. Appls. 478, T.D. 43222, and again in *United States* v. *American Hecolite*

*Denture Corp.*, 21 CCPA 131, T.D. 46465, supra, it was held that material having a shape which generally followed the curvature of the human mouth and which was intended for use in making dental plates was a partly finished article, even though there was evidence in the latter case that it was sometimes reshaped and used in making artificial eye bases.

On the other hand, it was held in *United States* v. *Guggenheim Bros. Dental Supply Co.*, 22 CCPA 613, T.D. 47604, that cellulose material 2⅞″ x 2⅜″ x ¼″, rectangular in shape but with two corners cut away and intended to be used in making artificial dentures, was not a partly finished article even though its size was such as to adapt it to be formed into dentures and the cutting away of the corners facilitated that operation. *Hecolite* was distinguished on the ground that the merchandise there "had been so formed as to have taken the shape of the palate and gums of the human mouth," whereas the material in the *Guggenheim* case did not "bear even a resemblance in shape to the finished articles into which eventually they are fashioned."

In *Mutual Lamp Mfg. Co.* v. *United States*, 21 CCPA 231, T.D. 46762, it was held that pieces of onyx 8″ x 9″ x ⅝″ polished on the edges and on one face, the other face being unpolished, and designed to be used as bases for lamps or other articles, were not onyx partly manufactured into articles, but onyx slabs, "even though these slabs in the condition imported were each intended for use as definite parts of several different articles."

But in *Atlas Export Co., et al.* v. *United States*, 43 CCPA 122, C.A.D. 618, it was held that articles differing from those in the Mutual Lamp case, supra, only by having a hole drilled in the center of each of them were onyx partly manufactured into articles.

In *Chas. H. Demarest, Inc.* v. *United States*, 44 CCPA 133, C.A.D. 650, it was held that palmyra fibers and stalks trimmed to a specific length approximating that necessary in their intended use in brooms or brushes were partly manufactured articles. In that decision, it was expressly stated that the fibers and stalks were not manufactured up to the point when they were trimmed, so that the trimming alone was held to convert them to partly manufactured articles.

Determination as to what constitutes a partly manufactured article, as hereinbefore described, is frequently a difficult one, and it is not possible to establish rigid rules which will be determinative of the disposition of the issue in all cases.

The Customs Court in arriving at its conclusion in the case at bar relied on our decision in *United States* v. *General Shipping & Trading Co., et al.*, 44 CCPA 168, C.A.D. 656. There, pieces of marble of various predetermined sizes numbered to facilitate installation and designed to be used in making a wainscot were held to be properly classifiable as marble slabs rather than as marble partly manufactured

into articles or a wainscot in knocked down condition. If that decision is properly controlling, the judgment here on appeal should be affirmed. However, an accurate interpretation of our decision in that case shows that a distinction was there made between pieces cut into shapes which rendered them virtually useless except for the single purpose to which they were dedicated; and rectangular pieces which, as the testimony therein showed, although of predetermined sizes, were otherwise of general utility and could be used without modification, for various purposes, including walls or floors. It appeared to the Customs Court that the instant merchandise, which also consists of rectangular pieces of imported merchandise of various predetermined sizes, fell into the latter category and hence could not properly be classed as partly manufactured articles.

We think the decision when read in its entirety nowise requires a holding that the rectangular pieces here are not partly manufactured articles, but, on the contrary, clearly and fully establishes the validity of our conclusion reached herein.

In *United States* v. *N. M. Albert Co., et al.*, 41 CCPA 191, C.A.D. 549, this court pointed out that partially dyed agate sliced into comparatively large pieces was properly classified as partly-manufactured articles, even though it could be made into manufactured articles only by completing the dyeing and cutting it into small pieces or shapes which, apparently, did not even approximate that of the original large pieces.

It is not possible from the authorities such as we have hereinbefore enumerated to formulate any general principle which can be universally applied. The decisions appear to have been made on the basis of an appraisal of the particular facts of the respective cases. They were obviously rendered in the light of such considerations, for example, as the extent of the changes made in the raw material; the amount of the work remaining to be done before a finished article could be produced; the similarity between the article as imported and the final product; and whether the work on the imported merchandise was done primarily to facilitate the shipping thereof or to advance the article toward completion.

In the case at bar, the pieces of merchandise are cut by specification to exact dimensions which closely approximate those of their final form and which, so far as appears, do not adapt them for any purpose other than the making of lids, and do not particularly facilitate their shipment. While it would be possible to use them in making small articles, there would be no object in using them for that purpose, since they are more expensive, per unit of area, than standard sheets and are no better adapted than such sheets for the making of small articles.

We are of the opinion that under all the circumstances above set forth, the merchandise should be regarded as partly finished articles,

rather than as sheets. It seems clear that if the pieces were in the form of stars, crescents or other special shapes which adapted them to their final use, they would not be properly classified as sheets, and the fact that the shape which best suits them for their final use happens to be rectangular, which is also the conventional form of sheets of material, should not alter their classification.

The judgment of the United States Customs Court for the reasons hereinbefore stated is *reversed*.

---

WORLEY, Judge, concurring.

Since the Customs Court appears to rely strongly on the decision of this court in *United States* v. *General Shipping and Trade, et al.,* I think we are obliged to more particularly distinguish the facts and issues there from those present here. In the *General Shipping* case, this court said:

> As correctly stated by the Customs Court, "The issue in this case is whether certain pieces of marble, imported to be used in the decoration of a church, were, in their imported condition, merely material, namely, slabs of marble to be made into a wainscot, or whether [as contended by the Government] they were collectively a manufactured article, to wit, a wainscot, in knocked-down condition."

Thus the issue there was limited to and controlled by the question of *dedication* rather than the question of a "partly manufactured article." More specifically, the Government did not argue that the marble slabs were partly manufactured, but proceeded on the proposition that they were so far advanced in condition as to be dedicated and were, in fact, an article, viz. a wainscot in a knocked-down condition.

We held there that since the record showed the slabs had general utility for other purposes, e.g., in walls and flooring, the evidence did not support the Government's position. Here, however, the only question is whether the instant articles are, in their condition as imported, "partly manufactured."